RICHARD T. WETMORE, WSBA #40396
DUNN & BLACK, P.S.
111 N. Post, Ste. 300
Spokane, WA 99201-0907
Telephone: (509) 455-8711
Facsimile: (509) 455-8734
E-mail: rwetmore@dunnandblack.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF EASTERN WASHINGTON

| | |
|---|---|
| THE GOLDFIELD CORPORATION, a Delaware Corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>RONALD F. NIXON and JANE DOE NIXON, individuals and a marital community comprised thereof,<br><br>  Defendants. | NO. 2:21-cv-301<br><br>**COMPLAINT** |

Plaintiff by and through its attorneys of record, Dunn & Black, P.S., alleges as follows:

## PARTIES, JURISDICTION, & VENUE

1. Plaintiff, The Goldfield Corporation ("Goldfield"), is a Delaware corporation with its principal place of business in Florida. Goldfield previously

COMPLAINT - 1

owned and operated the Sierra Zinc Mine and Mill ("Site"). The Site covers approximately 190 acres including portions of the SW ¼ and NW ¼ of Section 20, Township 38, Range 41 Willamette Meridian and the SE ¼ and SW ¼ of Section 17, Township 38, Range 41, Willamette Meridian, Stevens County, Washington. It is located approximately 24 miles north of Colville, and 17 miles south of Northport, on Goldfield Mine Road, in Stevens County, Washington.

2. Defendant Ronald F. Nixon and Jane Doe Nixon (collectively "Nixon"), individuals and comprising a marital community, are Washington residents residing in Stevens County, Washington. Upon information and belief, Nixon purchased certain portions of the Site from American Trading & Exchange Corporation, formerly known as Tri-Nite Mining Company by Statutory Warranty Deed in 1989.

3. Diversity exists between Goldfield and Nixon, and Goldfield's claims are for the equitable relief of specific performance or in the alternative damages in excess of $75,000 exclusive of interest, costs, and attorney fees. Therefore, the Court has proper jurisdiction pursuant to 28 U.S.C. § 1332.

4. Plaintiff Goldfield's alternative remedy seeks damages for contribution under 42 U.S.C. § 9613(f) for costs Goldfield incurred pursuant to an Administrative Settlement Agreement and Order on Consent for Removal Action entered into between Goldfield and the United States Environmental Protection

COMPLAINT - 2

Agency ("EPA") pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9604, 9606, 9607 and 9622 ("CERCLA"). Therefore, the Court also has proper jurisdiction pursuant to 28 U.S.C. § 1331.

5. Nixon resides in Stevens County, Washington which is located within the Eastern District of Washington. Therefore, venue is proper pursuant to 28 U.S.C. § 1391.

## FACTS

6. Goldfield realleges and incorporates by reference all preceding allegations as if fully stated herein.

7. The Site is a former lead-zinc mine and mill.

8. Upon information and belief, mining and milling operations at the Site began in approximately 1889.

9. Upon information and belief, the Site was owned and operated by the Sierra Zinc Company from approximately 1940 to 1944.

10. Goldfield purchased the Site in approximately 1948 and operated it until selling the Site in approximately 1960.

11. Upon information and belief, mining and milling activities continued at the Site by various entities after Goldfield sold it in 1960 until at least the mid to late 1970s.

COMPLAINT - 3

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734

12. Upon information and belief, Nixon purchased large portions of the Site in 1989.

13. The EPA first investigated the Site in 2001 as part of an evaluation of several former mine sites within the Upper Columbia River area.

14. The EPA conducted a second site investigation during July 2013.

15. Soil samples taken during the second site investigation indicated the presence of heavy metals including arsenic, cadmium, lead, mercury, thallium, and zinc.

16. The EPA determined that some heavy metals were present at concentrations that may present risks to human health and the environment.

17. In 2014, Goldfield entered into an Administrative Settlement Agreement and Order on Consent for Removal Action ("AOC") with the EPA pursuant to CERCLA, Docket No. 10-201400168.

18. In approximately June 2014, Goldfield entered into an Access Agreement with Nixon to provide access to Goldfield so that it could implement the removal action and other remedial actions, including placement of a soil cover, contemplated by the AOC (collectively, "Removal Action"). A copy of the Access Agreement is attached hereto as **Addendum 1** and expressly incorporated herein.

19. The Access Agreement identified specific work that was required to be performed pursuant to the Removal Action.

COMPLAINT - 4

20. The Access Agreement also provided that the EPA may require the execution and recordation of an environmental covenant affecting certain areas of the Site owned by Nixon ("Environmental Covenant").

21. Pursuant to the express provisions of the Access Agreement, Goldfield agreed to perform and bear all costs associated with the Removal Action required by the AOC, conditioned upon Nixon granting access to the Site, providing use of borrow material from the Site, and agreeing to execute and record any Environmental Covenant required by the EPA.

22. Goldfield completed the Removal Action in 2015, which consisted generally of demolition of the mill and barn buildings, removal of approximately 86,000 cubic yards of lead-contaminated soils from various locations outside of the tailings impoundment, placement of excavated lead contaminated soils within the tailings impoundment, re-contouring the tailings impoundment, placement of an ecological barrier and clean cover soils on the tailings impoundment, and revegetation of the covered tailings impoundment. Excavated areas were backfilled and/or graded to blend in with surrounding terrain. Some tailings in heavily treed areas were left in place and covered to the maximum extent possible while leaving surrounding trees intact.

23. In total, Goldfield incurred costs of approximately $2,683,192.68 to perform the work associated with the Removal Action.

COMPLAINT - 5

24. Goldfield has conducted periodic compliance monitoring and inspections since completion of the Removal Action and provided reports to, among others, the EPA regarding such monitoring and inspections.

25. On or about September 8, 2021, the EPA directed Goldfield to obtain and record the required Environmental Covenant for the Site as part of Goldfield's continuing obligations under the AOC. A copy of the EPA's directive is attached hereto as **Addendum 2** and expressly incorporated herein.

26. Goldfield has subsequently demanded that Nixon execute the Environmental Covenant and return such executed Environmental Covenant, so that it can be recorded pursuant to the express terms of the Access Agreement. A copy of the required Environmental Covenant is attached hereto as **Addendum 3** and expressly incorporated herein.

27. Nixon has breached the Access Agreement by refusing to execute and allow the Environmental Covenant demanded by the EPA to be recorded.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

28. Goldfield realleges and incorporates by reference all preceding allegations as if fully stated herein.

29. Goldfield and Nixon entered into the Access Agreement.

30. Goldfield fully performed all obligations pursuant to the Access Agreement.

COMPLAINT - 6

31.    Nixon has refused to perform, as required by the express terms of the Access Agreement, despite Goldfield's demand.

32.    Nixon's refusal to perform under the express terms of the Access Agreement will directly and proximately cause Goldfield to suffer substantial harm.

33.    The obligations under the Access Agreement are unique, requiring the parties to perform specific obligations and the failure to perform such obligations cannot be adequately addressed through award of monetary damages.  Therefore, specific performance is the appropriate remedy for Goldfield as a result of Nixon's breach of contract, in addition to all other remedies available to Goldfield, including without limitation, an award of contractual attorneys' fees.

34.    Alternatively, Goldfield is entitled to contribution in an amount to be proven at trial pursuant to 42 U.S.C. § 9613(f), damages for any additional costs Goldfield incurs with regard to the EPA as a result of Nixon's breach, interest, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, The Goldfield Corporation prays for the following relief:

1.    For specific performance requiring Defendant Ronald F. Nixon to execute the Environmental Covenant, before a notary public, and deliver the same

COMPLAINT - 7

to the State of Washington, Department of Ecology for countersignature and filing with the Stevens County Auditor's Office;

    2.    For attorneys' fees and costs, as provided by contract and applicable law;

    3.    Alternatively, for judgment against Defendants in an amount to be proven at trial;

    4.    For interest provided by applicable law; and

    5.    For further relief the Court deems just and equitable.

DATED this 20th day of October, 2021.

        DUNN & BLACK, P.S.

        */s/ Richard T. Wetmore*
        RICHARD T. WETMORE, WSBA #40396
        Dunn & Black, PS
        111 North Post, Ste. 300
        Spokane, WA 99201
        Telephone: (509) 455-8711
        Fax:   (509) 455-8734
        rwetmore@dunnandblack.com

        *Attorneys for Plaintiff*

COMPLAINT - 8

**Dunn&Black**
A Professional Service Corp.
111 North Post, Suite 300
Spokane, WA 99201
VOICE: (509) 455-8711 • FAX: (509) 455-8734